United States District Court
Southern District of New York
------------------------------------X
LOCKWOOD PENSION SERVICES, INC., and
STEVEN LOCKWOOD,

                    Plaintiffs,

          -against-                          08 Civ. 8229 (DAB)
                                             ORDER
STEADFAST INSURANCE COMPANY,

                    Defendant.
------------------------------------X
DEBORAH A. BATTS, United States District Judge.

     This is an insurance coverage action, in which Plaintiffs

seek damages for breach of contract and declaratory relief

pursuant to 28 U.S.C. §§ 2201 and 2202, arising out of a life

insurance agent and omissions liability insurance policy issued

by Steadfast under which Plaintiffs are insureds.  Plaintiffs

demand that Steadfast provide them with defense with respect to

cross-claims and third party claims asserted in a separate

action, also pending before this Court, now captioned In re

Arthur Kramer Insurance Trust Litigation, 08 Civ. 2429 (DAB)

("Kramer Action").[1]  Defendant has moved to dismiss the Complaint

and the Plaintiff has cross-moved for summary judgment on the

issue of the defense agreement.  For the reasons stated herein,

Defendant's Motion to Dismiss is HEREBY DENIED.  Plaintiff's

Cross-Motion for Summary Judgement is GRANTED.

_____

[1]    Familiarity with the facts set forth in the Court's Opinion
of September 1, 2009 is assumed.

## FACTUAL BACKGROUND

The facts of the underlying action are fully set forth in this Court's Opinion of September 1, 2009 in the Kramer Action.

Plaintiffs allege that they entered into an insurance policy with Defendant ("the Policy") which Steadfast has breached. According to the Plaintiffs they are "insureds" under the Policy, according to which, "[t]he Company [Steadfast] shall pay on behalf of the 'Insured' all sums which the 'Insured' shall become legally obligated to pay as 'Damages' as a result of: 1. Any 'Claim' arising out of a negligent act, error or omission of the 'Insured'...in rendering or failing to render 'Professional Services' for others in the conduct of the 'Named Insured's' profession as a licensed Life...Insurance Agent, Broker...." (Compl. at ¶¶ 17, 18.) In the Policy, "Professional Services" is defined by an enumerated list which includes, <u>inter alia</u>:

> 1. The solicitation sale or servicing of:
>    a. Life Insurance...
>
> 7. The purchase or sale or the giving of advice regarding life settlements arranged through a provider approved by the insurance company named in item 1 of the Declarations provided the following conditions are met: [listing five conditions].

(<u>Id.</u> at ¶ 21, Compl. Ex. D.)

In the Policy, Damages are defined as, "the monetary amounts for which an 'Insured' or 'Additional Insured' is legally liable including sums paid as judgements, awards or settlements, and any

taxes, fines or penalties incurred by a third party and included in such third party's 'Claim' against the 'Insured' or 'Additional Insured'."  (Compl. at ¶ 20.)  However, the Policy contains the following exclusion, which declares that the Policy does not apply to any 'claim': "arising out of disputes by or between 'Insureds' or the insurance company named in Item 1 of the Declarations (or its 'Broker/Dealer' subsidiary) or any other insurance company, agent or broker, including but not limited to, disputes concerning commissions, fees, client lists or entitlements however, this exclusion shall not apply to ... (3) a 'Claim' brought by an insurance company, other than the insurance company named in Item 1 of the Declarations, against an 'Insured' where the 'Claim' was initially brought against the insurance company by a third party based on the acts of the 'Insured', provided such acts would otherwise be covered under this Policy." (Id. at ¶ 22.)

On or about April 14 and April 22, 2008, Lockwood tendered the underlying Kramer Actions to Steadfast seeking coverage under the Policy.  (Id. ¶ 23.) Steadfast mailed several letters culminating in a July 11, 2008 letter in which Steadfast denied a duty to defend or indemnify Lockwood in the Kramer suit.  (Compl. at ¶ 29.) Steadfast based its denial of a duty on three grounds:

3

1) that the Kramer Action did not allege "Damages" as defined in the Policy; 2) that the cross-claims and third party claims against Lockwood did not allege "Professional Services" under the Policy and 3) the coverage is excluded by Exclusion L. of the Policy.  (Id. at ¶ 29.) Lockwood alleged that at the time of filing of the Complaint, September 2008, Lockwood had incurred approximately $300,000 in attorneys fees and costs in the defense of the Kramer Action.   (Id. at ¶ 39.)  The Court, familiar with the briefing in that matter, takes judicial notice of the fact that that number is certainly higher.

Steadfast has moved to dismiss the Complaint arguing that because Lockwood was engaged in "the purchase or sale of or the giving of advice regarding life settlements", and it is undisputed that the conditions listed were not met, then Lockwood fails to state a claim for indemnity and defense. (Def. Mem. of Law at 9.)  Steadfast further argues that Exclusion L. precludes coverage for a Claim by any insurance company, except where the Claim was intially brought against the insurance company by a third party based on the acts of the Insured and where such acts would otherwise be covered under the Policy.  (Id. at 9.) Plaintiffs have cross moved for summary judgment on the pleadings as they argue there are no facts in dispute between the Parties.

4

(Pls'. Mem. of Law at 2.)  According to Plaintiffs, "[c]overage
is determined solely by the provisions of the policy and
allegations tendered for coverage, and all parties agree that the
Court should consider this matter on summary judgment."  (Id.)

DISCUSSION

A. Motion to Dismiss Standard

For a complaint to survive dismissal under Rule 12(b)(6),
the plaintiff must plead "enough facts to state a claim to relief
that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550
U.S. 544, 570 (2007).  "A claim has facial plausibility," the
Supreme Court has explained,

> "when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged.   The
> plausibility standard is not akin to a 'probability
> requirement,' but it asks for more than a sheer
> possibility that a defendant has acted unlawfully.
> Where a complaint pleads facts that are 'merely
> consistent with' a defendant's liability, it 'stops
> short of the line between possibility and plausibility
> of 'entitlement to relief.'"

Ashcroft v. Iqbal, --- S.Ct. ----, 2009 WL 1361536, *12 (May 18,
2009) (quoting Twombly, 550 U.S. at 556-57).  "[A] plaintiff's
obligation to provide the grounds of his entitlement to relief
requires more than labels and conclusions, and a formulaic
recitation of the elements of a cause of action will not do."

5

Twombly, 550 U.S. at 555 (internal quotation marks omitted). "In keeping with these principles," the Supreme Court has stated,

> "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

Iqbal, 2009 WL 1361536 at *13.

In ruling on a 12(b)(6) motion, a court may consider the complaint as well as "any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference." Zdenek Marek v. Old Navy (Apparel) Inc., 348 F.Supp.2d 275, 279 (S.D.N.Y. 2004) (citing Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001) (internal quotations omitted)).

B. Summary Judgment Standard

A district court should grant summary judgment when there is "no genuine issue as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Hermes Int'l v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 107 (2d Cir. 2000). Genuine issues of

6

material fact cannot be created by mere conclusory allegations;
summary judgment is appropriate only when, "after drawing all
reasonable inferences in favor of a non-movant, no reasonable
trier of fact could find in favor of that party." Heublein v.
United States, 996 F.2d 1455, 1461 (2d Cir. 1993) (citing
Matsushita Elec. Industr. Co. v. Zenith Radio Corp., 475 U.S.
574, 587-88 (1986)).

In assessing when summary judgment should be granted, "there
must be more than a 'scintilla of evidence' in the non-movant's
favor; there must be evidence upon which a fact-finder could
reasonably find for the non-movant." Id. (citing Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). While a court
must always "resolv[e] ambiguities and draw [ ] reasonable
inferences against the moving party," Knight v. U.S. Fire Ins.
Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson), the non-
movant may not rely upon "mere speculation or conjecture as to
the true nature of the facts to overcome a motion for summary
judgment." Id. at 12. Instead, when the moving party has
documented particular facts in the record, "the opposing party
must 'set forth specific facts showing that there is a genuine
issue for trial.'" Williams v. Smith, 781 F.2d 319, 323 (2d Cir.
1986) (quoting Fed. R. Civ. P. 56(e)). Establishing such facts

requires going beyond the allegations of the pleadings, as the moment has arrived "'to put up or shut up.'"  Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted).  Unsupported allegations in the pleadings thus cannot create a material issue of fact.  Id.

    C. Application of Exclusion L.

    There is no question that the Kramer Action involves a "Claim" brought by an insurance company against the "Insured" (in this action (Lockwood)) where the "Claim" was initially brought against the insurance company by a third party, Alice Kramer, based on the acts of the "Insured", Lockwood.  Indeed, Steadfast only seeks to argue that this Exclusion provision applies only because of the next clause of Exclusion L, "provided such acts would otherwise be covered under this Policy."  (Def. Mem. of Law at 9.) Therefore, the Court must determine whether Lockwood's acts, as alleged in the Kramer Action, would be otherwise covered by his Policy with Steadfast such that defense and/or indemnification is required.

D. Defense Agreement

"Under New York Law, it is axiomatic that the duty to defend is 'exceedingly broad' and more expansive than the duty to indemnify." IBM Corp. v. Liberty Mut. Fire Ins. Co., 303 F.3d 419, 424 (2d Cir. 2002). Indeed, in the Policy, these two duties are listed separately, in their own enumerated paragraphs. (Compare Policy I.A. with Policy I.C.) The Policy provides, inter alia, that "The Company shall have the right and duty to defend any 'Claim' against the 'Insured' and/or 'Additional Insured' seeking 'Damages' to which this insurance applies even if any of the allegations of the 'Claim' are groundless, false or fraudulent." Although Defendant argued in its letter denying its duty to Lockwood, that Plaintiffs have not been sued for "Damages", they do not make that argument here. Defendant acknowledges that it "stated in its opening memorandum that the Underlying Actions [the Kramer Action] seek[s] an award of damages." (Def. Mem. Opp. SJ at 8, fn. 5.) An insurer can escape the duty to defend only if there is no legal or factual basis in the complaint upon which the insurer might eventually have to indemnify the insured. McCostis v. Home Ins. Co. of Indiana, 31 F.3d 110, 112 (2d Cir. 1994). Accordingly, the Court finds that to the extent Defendant has moved to dismiss

Plaintiffs' causes of action seeking to enforce the defense
agreement, that motion is DENIED.  However, Plaintiffs have cross
moved for summary judgment on the same ground that the defense
agreement, separate from the indemnity agreement, must be
enforced as a matter of law.  That motion for summary judgment is
GRANTED.


E. Indemnification Agreement

If the "Claim" against Lockwood arose out of a negligent
act, error or omission in rendering or failing to render
professional services, then Plaintiffs are indemnified.
Professional Services, according to the Policy, shall mean "the
solicitation, sale or servicing of Life Insurance" but not "the
purchase or sale of or the giving of advice regarding life
settlements arranged through a provider..." unless certain
conditions are met.  Therefore, two questions arise: 1) what was
Lockwood alleged to have done in the Kramer Actions and 2) are
those acts properly understood as selling/servicing life
insurance or purchasing/selling/giving advice regarding life
settlements.

10

1. Allegations Against Lockwood

In the Kramer Action, Plaintiff Alice Kramer alleges that
Lockwood served as an Insurance Broker/Dealer in order that
Arthur Kramer might obtain life insurance policies, then assisted
Kramer in establishing Insurance Trusts to hold that Policy.  (08
Civ. 2429, Dkt. No. 31 ¶¶ 1-29.)  Plaintiff further alleges that
"upon issuance of the policies, and at the direction of Lockwood
Pension Services and possibly other defendants, Mr. Kramer
directed Andrew and Rebecca to execute putative assignments of
their beneficial interest in the June Trust to stranger investor
TTA [Tall Tree Advisors]."  (08 Civ. 2429, Dkt. No. 31 ¶ 29.)
Plaintiff alleges that at the direction of Lockwood Pension
Services and possibly other defendants, in 2007, defendant Berck
in his capacity as trustee of the June Trust, sold the ownership
interests in the Transamerica Policies to a non-party individual
or entity.  (Id. ¶ 30.)

Defendant Phoenix Life Insurance alleges that
"Lockwood...developed a formulaic method of circumventing New
York's insurable interest rule, using elderly persons, and the
trusts they encourage or aid them in establishing, as strawmen to
acquire life insurance policies for the benefit of strangers who
have no insurable interest in the lives of the insureds (i.e., a

11

'SOLI' scheme)." (08 Civ. 2429, Dkt. No. 43 at ¶ 7.)  Phoenix

claims that,

> Lockwood   colluded   with   Arthur   Kramer   to
> participate  in  one  or  more  fraudulent  SOLI
> arrangements.  In  particular,  Lockwood  colluded
> with Mr. Kramer (a) to establish a life insurance
> trust, (b) to apply for one or more life insurance
> policies  in  which  the  trust  would  be  both  the
> policyholder and beneficiary of the policies, (c)
> upon the issuance of the policies, to immediately
> transfer  the  beneficial  interest  in  the  trust  to
> Tall  Tree  and/or  Life  Product  in  exchange  for
> monetary  compensation,  and  (d)  to  replace  the
> financial  institution  trustee  of  the  trust  with
> Berck.

(Id. at ¶ 8.)

Finally, Lincoln Life and Annuity alleges that Lockwood,

Lockwood Pension Services, and/or other entities engaged in

secondary life insurance market transactions and solicited

Kramer's participation in a "SOLI" scheme.  The original

beneficiary of the Kramer Trust was Kramer's daughter, Liza.  (Id.

at ¶ 27.)  Lincoln, like the Plaintiff, alleges that the Kramer

Trust documents were prepared by legal counsel for Lockwood

Pension Services at the direction of Lockwood, Lockwood Pension

Services, and/or other entities engaged in secondary life

insurance market transactions. (Id. at ¶ 28.)  Further, it

alleges that at no time did Liza intend to retain her beneficial

interest in the Kramer Trust and, consequently, the right to

12

receive the death benefit payable under the Kramer Policy.  (Id.
at ¶ 37.)  According to Lincoln, at no time did Kramer believe
that the premiums due would be paid by Kramer or the Kramer
Trust; Kramer expected and understood that the premiums due under
the Kramer Policy would be advanced and/or financed by a third
party. (Id. at ¶ 39.)  Lincoln alleges that the submission of the
Kramer Application and the Kramer Policy that resulted were part
of a collaborative effort by Lockwood, LPS, Life Product
Clearing, and/or other entities engaged in secondary life
insurance market transactions, to profit at Lincoln's expense
from a gamble upon the life of Kramer. (Id. at ¶ 41.)  Lincoln
alleges that upon issuance of the Kramer Policy, at the direction
of Lockwood, Lockwood Pension Services, Life Product Clearing
and/or other entities engaged in secondary life insurance market
transactions, Kramer instructed his daughter, Liza, to execute
putative assignments of her beneficial interest in the Kramer
Trust to a stranger investor, Life Product Clearing. (Id. at ¶
42.)  Lincoln alleges, upon information and belief, subsequent to
Kramer's death, the Estate of Arthur Kramer received various
communications from representatives of Lockwood Pension Services
and certain stranger investors demanding copies of Kramer's death
certificate so they could submit claims to Lincoln and other

13

insurance companies for the payment of death benefits on policies insuring the life of Arthur Kramer.  (Id. at ¶ 54.)


   2. Life Insurance and Life Settlements

   The question now presented is whether the facts alleged above in the Kramer Action are properly understood as selling life insurance, or providing advice on life settlements, as set forth in the Policy.  Of course, "life settlement" is nowhere defined in the Policy.  Further, New York Insurance Law does not define Life Settlement.  Parties have cited to one Opinion of the State of New York Insurance Department, which declined to define life settlement but nevertheless found that: "a 'life settlement' is generally considered to be the sale of a life insurance policy by an individual who is not suffering from a terminal illness." Plaintiffs point out that they are not alleged to have been involved in the sale of a "policy" but rather the sale of a beneficial interest in a trust.

   Plaintiff have, therefore, alleged a "plausible" set of facts consistent with a sale of an insurance policy, and not a life settlement to the extent that a life settlement only refers to the sale of policies and not the sale of trusts.  However, discovery may reveal extrinsic evidence demonstrating that life

14

settlement is properly understood as engaging in the kind of
"SOLI" scheme that the Kramer Action alleges here.


CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss
the Complaint is DENIED.  Plaintiff's Cross-Motion for Summary
Judgment on the issue of defense is GRANTED.

SO ORDERED.


Dated:    New York, New York

September 4, 2009

Deborah A. Batts
United States District Judge

15